IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| SHAUN WINSETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01155-STA-egb |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Shaun Winsett filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on November 19, 2012. On February 8, 2013, the ALJ denied the claim. The Appeals Council subsequently denied her request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on December 20, 1964, and was forty-six years old at the time of the filing of her application for benefits on March 14, 2011. She has a twelfth grade education. She alleges disability due to back, hip, leg, and stomach problems, a crushed ankle, depression, anxiety, and a blind spot in her left eye.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through March 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: left ankle impingement, post-traumatic osteoarthritis, status-post fracture, back disorder, obesity, anxiety, and depression; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) but is limited to lifting, pushing, pulling and carrying up to twenty pounds occasionally; sitting for two hours at a time without interruption for a total of four hours in an eight hour workday; standing and/or walking for thirty minutes at a time without interruption and for two hours each in an eight hour workday; she can never operate foot controls bilaterally, climb ladders or scaffolds, balance, kneel, crawl, work around unprotected heights, dusts, odors, fumes, pulmonary irritants, or extreme temperature; she can occasionally climb stairs and ramps, stoop, crouch, work around moving mechanical parts, humidity, wetness, vibrations, and moderate noise; she can interact with others but would do better working with things rather than with people; she is limited to the performance of simple and detailed instructions, and she can sustain concentration, persistence, and pace for two hours at a time, and adapt to infrequent changes. (5) Plaintiff is not able to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the medical-vocational grids as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

---

[8] R. 15 – 24.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, a substantial number of jobs exist in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the hypothetical question posed to the vocational expert at Plaintiff's hearing and the residual functional capacity assessment of the ALJ varied significantly and, therefore, the testimony of the vocational expert cannot constitute substantial evidence to support a finding that she can perform other work that exists in substantial numbers in the national economy. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

---

[13] 20 C.F.R. § 404.1520(a).

[14] 20 C.F.R. § 404.1527(c)(2).

[15] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[16] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[17] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[18] Opinions from nontreating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[19] State agency consultants are qualified specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[20]

In the present case, Plaintiff has not pointed to any reports or opinions from her treating physicians suggesting that she has limitations greater than those imposed by the ALJ. Therefore, there is no dispute that the ALJ adequately weighed the opinions of Plaintiff's treating physicians.

The ALJ gave great weight to the opinion of Leonard Hayden, M.D., a consultative examiner, and significant weight to the opinions of Kanika Chaudhuri M.D., and Joseph

---

[16] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[17] *Id.* § 404.1502, 404.1527(c)(2).

[18] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[19] 20 C.F.R. § 404.1527(c).

[20] *See* 20 C.F.R. § 404.1527(e)(2)(i).

Curtsinger, M.D., state agency medical consultants, who found that Plaintiff could perform a range of light level work activity.[21] The ALJ also gave great weight to the opinion of Dennis Wilson, Ph.D., a psychological consultative examiner, and significant weight to the opinions of Sally Rowley, Psy.D., and Larry Welch, Ed.D., state agency psychological consultants, who found that Plaintiff could perform simple and detailed work functions and could adapt in work-like situations.[22]

Substantial evidence supports the weight given to the medical evidence and opinions in the record. Based on this evidence, the ALJ properly determined that Plaintiff could perform less than the full range of light work, and Plaintiff has failed to show that she is otherwise more limited.

A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[23] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[24] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying," although the credibility finding must find support in the record.[25]

---

[21] R. 239-44, 270-78, 396.

[22] R. 249, 266-68, 392-94.

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[24] *Id.*

[25] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

The ALJ questioned Plaintiff's credibility based on her leaving work for reasons unrelated to her disability, a lack of objective medical evidence to support her complaints of disability, the infrequent treatment for her physical complaints, lack of treatment by a mental health professional for her mental complaints, lack of medication side effects, and inconsistencies between her statements and the other evidence of record.[26]

The Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition and the ALJ found that her impairments could reasonably cause the kind of limitations alleged by Plaintiff, Plaintiff's statements about the intensity, persistence, and limiting effect of her alleged symptoms were not entirely credible because they were inconsistent with the evidence of record. The ALJ carefully considered the record as a whole. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[27] The Commissioner may carry this burden by applying the medical-vocational grids[28] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on

---

[26] *See O'Neill v. Colvin*, 2014 WL 3510982 at *23 (N.D. Ohio July 9, 2014) ("The ALJ also noted that the records indicated that Plaintiff reported that he was laid off from his job and filed for disability because his unemployment compensation ran out, while other records indicated that Plaintiff reported that he quit his job because of back pain.").

[27] *Jones*, 336 F.3d at 474.

[28] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

whether the claimant has transferable work skills.[29] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[30]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the grids and, therefore, used the grids merely as a framework in determining whether Plaintiff could perform other work. The ALJ relied on the testimony of a vocational expert in determining that there was a significant number of jobs in the national economy that Plaintiff could perform. The ALJ asked the vocational expert about an individual of Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert responded that such an individual was capable of performing the jobs of film touch up inspector, touch up screener, and table worker, jobs which exist in significant numbers in the national economy.[31]

Plaintiff argues that the ALJ's hypothetical question did not track the residual capacity finding. Because of this, she contends, the ALJ could not properly rely on the vocational expert's opinion to support her decision. Specifically, Plaintiff asserts that the ALJ's hypothetical found Plaintiff limited to lifting up to ten pounds, with a light level of standing, and limited to jobs involving sitting and standing at will, but the residual functional capacity finding involved an

---

[29] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[31] R. 55-56.

9

individual who could lift up to twenty pounds, could stand and walk for two hours each, and could alternate sitting and standing every thirty minutes.

While Plaintiff is correct that the ALJ did ask the vocational expert about an individual who could lift up to ten pounds, because Plaintiff was capable of lifting up to twenty pounds, she would still be capable of performing the sedentary level jobs named by the vocational expert.[32] The hypothetical question matched the limitations in the residual functional capacity finding in all other respects. Although the vocational expert testified that the jobs she named could be performed by someone who could sit and stand at will, because Plaintiff could sit for two hours at a time before needing to change positions and could stand for thirty minutes at a time before needing to change positions, she would be able to perform these jobs.[33]

The testimony of the vocational expert provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and is not disabled.[34] Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 6, 2017.

---

[32] R. 54-56.

[33] R. 55.

[34] *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001) (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).